**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY LAW,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>VIRTUS PARTNERS HOLDINGS, LLC, *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 22-2329 (GC) (RLS)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

　　This matter comes before the Court on Defendants Virtus Partners Holdings, LLC ("Virtus"), Fidelity National Information Services, Inc. (d/b/a FIS) ("FIS"), and Joseph Elston's ("Elston," and collectively with Virtus and FIS, "Defendants") Motion to Dismiss Counts IV, V, and VII against Virtus and FIS, and all Counts against Elston, of Plaintiff Jeffrey Law's ("Plaintiff") Complaint (ECF No. 1, Ex. A). (ECF No. 7.) Plaintiff opposed (ECF No. 12), and Defendants replied (ECF No. 13). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court denies the Motion.

I.  **BACKGROUND**[1]

In or around September 2014, Virtus hired Plaintiff as a senior product manager. (Compl. ¶ 6, ECF No. 1, Ex. A.) Plaintiff was a New Jersey resident at all relevant times during his employment. (Compl. ¶ 1; *see also* Pl. Cert. ¶ 2, ECF No. 12-1.) During his employment with Virtus, Plaintiff led a group of six to nine individuals, five of whom were based in New York and four of whom were based in Texas. (Elston Cert. ¶ 7, ECF No. 7-2.)[2] As such, Virtus expected Plaintiff to report to the New York office three to four days per week. (*Id.*) Plaintiff also traveled to various locations outside of New York and New Jersey to fulfill his job responsibilities. (*Id.* ¶ 8; *see also* Compl. ¶¶ 23-24.)

In February 2018, Plaintiff and Virtus entered into a new employment agreement. (Compl. ¶ 11.) Within a week, Virtus provided Plaintiff with a modified employment agreement, which Plaintiff also executed. (*Id.*) This employment agreement contained a Texas choice of law provision. (Defs.' Moving Br. 3 ("Your employment and the terms of this letter agreement shall be governed by Texas Law."), ECF No. 7-1.)[3]

From June 2017 until October 2020, Plaintiff reported to Elston. (Elston Cert. ¶ 6.) Elston has resided in Texas at all relevant times. (*Id.* ¶ 3.) According to Elston, all of his interactions with

---

[1] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The Court, however, only recounts the facts necessary to decide the instant motion.

[2] "Courts may rely upon matters outside the pleadings to determine jurisdictional facts." *Duell ex rel. D.D. v. Kawasaki Motors Corp., U.S.A.*, 962 F. Supp. 2d 723, 727 (D.N.J. 2013).

[3] Defendants quote this portion of the new employment agreement in their moving brief, and they cite to Exhibit 1 of the Elston Certification. (*See* Defs.' Moving Br. 3.) The Court, however, does not see an Exhibit 1 to the Elston Certification. The Court only sees Exhibit 1 to the Richard J. Cino ("Cino") Certification, which does not contain the quoted phrase. (*See* Cino Cert., ECF No. Ex. 7-3, Ex. 1.)

2

Plaintiff occurred outside of New Jersey. (*Id.*) Plaintiff disputes this fact. (Pl.'s Opp'n Br. 12 ("Elston's statement that '[a]ll of [his] face-to-face interactions with Plaintiff occurred outside of New Jersey' is simply not true — Plaintiff recalls visiting clients with . . . Elston . . . in Park Ridge, New Jersey."), ECF No. 12.) In any event, Elston (1) does not own real property in New Jersey, (2) is not required to pay taxes in New Jersey, (3) does not maintain an office, mailing address, phone number, or bank account in New Jersey, (4) is not registered to vote in New Jersey, and (5) has a driver's license issued by Texas. (Elston Cert. ¶¶ 11-15.) Plaintiff contends that Elston was regularly and routinely involved in the management of Virtus's (and eventually FIS's) activities in New Jersey. (Pl.'s Opp'n Br. 12.) According to Plaintiff, Elston participated in multiple meetings with clients in New Jersey. (*Id.*) Plaintiff also contends that Elston would regularly participate in telephonic and virtual/teams conferences with Plaintiff and other employees in New Jersey. (*Id.*)

In 2019, Virtus began acquisition negotiations with FIS, who it eventually acquired. (Compl. ¶ 22.) Plaintiff then began reporting to Scott Alintoff. (*Id.* ¶ 36.) FIS subsequently, in October 2020, "eliminat[ed] [Plaintiff's] prior Employment Agreement with Virtus and reduc[ed] his total potential compensation with FIS" despite on-going compensation disputes between Plaintiff and Virtus. (*Id.* ¶ 37.) Plaintiff's new, October 2020 Employment Agreement "supersedes any prior agreement in place." (Cino Cert., Ex. 1.) FIS terminated Plaintiff in April 2021. (Compl. ¶ 42.)

During Plaintiff's entire time working for Virtus and FIS, Plaintiff routinely worked from his home in Warren, New Jersey and spent a good deal of time traveling to meet with clients. (Pl. Cert. ¶ 2.) When FIS acquired Virtus, FIS had a New Jersey office, and FIS employees that resided in New Jersey were told that they should use the New Jersey office rather than continue to

3

commute into New York. (*Id.* ¶ 3.) Eventually, FIS informed its employees that it would not renew the lease for the New York office, and it provided no other New York office locations to Plaintiff. (*Id.* ¶¶ 5-6.)

Plaintiff brings several New Jersey statutory actions against Defendants based on his employment with Virtus and FIS. (*See* Compl., Counts IV, V, VII.) Plaintiff argues that, as a resident of New Jersey, he is within his rights to seek protection under New Jersey law, given that his most recent employment agreement did not contain a choice of law provision. (Pl.'s Opp'n Br. 2.) Plaintiff additionally argues that at all relevant times he performed most of his work from his home in New Jersey, further entitling him to protections under New Jersey law. (*Id.*)

Defendants argue that Plaintiff is engaging in forum-shopping. (Defs.' Moving Br. 1.) Defendants contend that Plaintiff's residence in New Jersey is insufficient to assert the New Jersey claims. (*Id.*) Defendants look to the Texas choice-of-law provision in Plaintiff's employment agreement as well as the employment relationship's strong connection to New York to argue that, in all circumstances, New Jersey law should not apply. (*Id.*) Defendants further argue that the Court lacks personal jurisdiction over Elston. (*Id.* at 11-15.) Defendants maintain that Elston does not have the continuous or systematic contacts required for general jurisdiction, and the causes of action do not relate to any of Elston's contacts with New Jersey, as required for specific jurisdiction. (*Id.* at 13-15.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[4] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[4] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), *as amended* (June 6, 2011). "First, the [C]ourt must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). In general, the Court "may not consider matters extraneous to the pleadings." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002); *see Brown v. Daniels*, 128 F. App'x 910, 913 (3d Cir. 2005) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004)) ("[C]ourts generally consider only allegations in the

complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

### III. **DISCUSSION**

Defendants' Motion to Dismiss alleges two grounds for dismissal. First, Defendants assert that substantive Texas law applies to Counts IV, V, and VII. Second, Defendants contend that the Court lacks personal jurisdiction over Elston in all Counts. The Court first analyzes the choice-of-law issue and then considers the causes of action against Elston.

#### A. Discovery Is Necessary to Determine Which State's Law Governs Plaintiff's Claims.

Generally, "when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Nuzzi v. Aupaircare, Inc.*, 341 F. App'x 850, 852 (3d Cir. 2009). If there is no choice-of-law provision, however, Courts sitting in diversity apply the choice-of-law test of the forum state. *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). New Jersey applies the most-significant-relationship test, which comprises two questions: whether an actual conflict exists, and (if so), which state has the most significant relationship to the controversy. *See Caspersen ex rel. Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23, 36 (D.N.J. 2020) (quoting, among other cases, *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008)). If no actual conflict exists, or if New Jersey has the most significant relationship to the causes of action here, New Jersey law applies. *See id.*

The second step of the test is "fact-intensive" since "[e]ach choice-of-law case presents its own unique combination of facts—the parties' residence, the place and type of occurrence[,] and the specific set of governmental interest[s]—that influence the resolution of the choice-of-law

6

issue presented." *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 490 (D.N.J. 2009) (quoting *Warriner*, 475 F.3d at 500). Since "the governmental interest analysis is fact intensive, it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage when little or no discovery has taken place." *In re Samsung DLP Television Class Action Litig.*, No. 07-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009). For causes of action sounding in contract, courts look to Section 188 of the Restatement of Conflicts of Laws (the "Restatement") to determine which state's law applies. *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 720-21 (D.N.J. 2011). These factors include: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.* Courts also look to more general factors outlined in Section 6 of the Restatement, including: (1) interests of interstate comity; (2) interests of the parties; (3) interests underlying the field of law; (4) interests of judicial administration; and (5) competing interests of the states. *Id.*; *see also Pepe v. Rival Co.*, 85 F. Supp. 2d 349, 380-81 (D.N.J. 1999) (applying the Restatement factors to an employment contract).

Here, the Court finds that the choice-of-law analysis is premature at the pleading stage and cannot be properly evaluated until after the factual record has been developed. *See, e.g., Buckley v. Power Windows & Sidings, Inc.*, No. 09-3162, 2010 WL 3981978, at *3 (D.N.J. Oct. 7, 2010) (finding a choice-of-law determination related to employment discrimination and retaliation claims was premature at the motion to dismiss stage as the issue would be more appropriately addressed in the context of a summary judgment motion after discovery on the issue has taken place); *see also In re Samsung*, 2009 WL 3584352, at *3 (concluding that the court could not "conduct New Jersey's fact-intensive governmental interest test based upon the pleadings" with

7

respect to causes of action for New Jersey statutory violations). The choice-of-law analysis in employment-related matters can be particularly intricate at times, such as now, where "employees and their supervisors more often perform their work tasks remotely in multiple locations rather than in a traditional common physical location." *Calabotta v. Phibro Animal Health Corp.*, 213 A.3d 210, 230 (N.J. Super. Ct. App. Div. 2019).

Here, as an initial matter, the Court is unclear which employment agreement governs Plaintiff's employment during which times. Without the opportunity to determine which employment agreements are implicated, the Court cannot determine if there is an enforceable choice-of-law provision applicable.[5] Additionally, if the Court finds that there is not an enforceable choice-of-law provision, there are currently insufficient facts to properly assess the employment agreement's place of performance, the where and how the employment agreement was negotiated, and the governmental interests, amongst other things. Furthermore, Plaintiff and Defendants dispute the primary locations of Plaintiff's employment (including New Jersey, New York, and myriad states where Plaintiff was required to travel). (*Compare* Defs.' Moving Br. 7-11 *with* Pl.'s Opp'n Br. 19-20.)

The Court, accordingly, denies Defendants' Motion to Dismiss Counts IV, V, and VII of the Complaint, finding that additional discovery is needed to appropriately determine which state's law should apply to Plaintiff's claims.

### B. The Court Has Personal Jurisdiction over Elston.

A court may exercise personal jurisdiction over a non-resident defendant only where "minimum contacts" exist such that jurisdiction "does not offend 'traditional notions of fair play

---

[5] This is further bolstered by the fact that Defendants did not include the employment agreement that they claim has the valid choice of law provision. *See supra* note 3.

and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Contacts with the forum sufficient to support personal jurisdiction over a non-resident defendant must be of a type that the individual "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). What constitutes minimum contacts varies with the "quality and nature of the defendant's activity," but a plaintiff merely claiming a relationship with a non-resident defendant is insufficient. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-17 (1984).

Defendants can be subject to either specific or general personal jurisdiction in a forum state. Specific personal jurisdiction may arise from particular or sporadic contacts if the cause of action arises out of or relates to the defendant's forum-related activities. *Helicopteros*, 466 U.S. at 414 & n.8. There is sufficient due process contact for personal jurisdiction if the defendant purposefully has directed his activities at residents of the forum. *Henry Heide, Inc. v. WRH Prods. Co.*, 766 F.2d 105, 108 (3d Cir. 1985). Where the nature or quality of a defendant's contact warrants, a single act can support jurisdiction when it is connected with the injury sued upon. *Burger King*, 471 U.S. at 475 n.18.

Here, the Court finds that Plaintiff's causes of action against Elston arise out of and relate to Elston's forum-related activities. The Court does not dispute that Elston was not a resident of New Jersey and did not have contacts with New Jersey associated with residency. (*See* Elston Cert. ¶¶ 11-15 (discussing Elston's lack of real property in New Jersey, New Jersey driver's license, etc.).) Elston's contacts with New Jersey do, however, relate to Plaintiff's causes of action against him—satisfying the requirements of specific jurisdiction. As a foundation, from June 2017 until October 2020, Plaintiff reported to Elston. (Elston Cert. ¶ 6.) Plaintiff contends that Elston was

regularly and routinely involved in the management of Virtus's (and eventually FIS's) activities in New Jersey. (Pl.'s Opp'n Br. 12.) Plaintiff contends that Elston would regularly participate in telephonic and virtual/teams conferences with Plaintiff and other employees in New Jersey. (*Id.*) According to Plaintiff, Elston also participated in multiple meetings with clients in New Jersey, both virtually and in person. (*Id.*) These are all activities that Elston does not seem to dispute. While Plaintiff and Elston dispute whether Elston met with Plaintiff in New Jersey, this is not dispositive. *See Wright v. Xerox Corp.*, 882 F. Supp. 399, 407 (D.N.J. 1995) ("[I]t is not important that [Defendant supervisor] only met with [P]laintiff in New York."). Elston, furthermore, was involved in the employment agreements with Plaintiff. (*See, e.g.*, Compl. ¶ 45.) These contacts, along with Plaintiff's allegation that Elston was involved in a discriminatory and retaliatory scheme against Plaintiff, are sufficient to satisfy specific jurisdiction. (*See, e.g., id.* ¶¶ 25, 33-34; *Wright*, 882 F. Supp. at 408 (finding contacts with the forum, "coupled with the participation in the allegedly discriminatory scheme, are sufficient to create jurisdiction over defendant").)

The Court, accordingly, denies the Motion to Dismiss all claims against Elston.

## IV.   CONCLUSION

For the foregoing reasons, the Court denies Defendants' Motion to Dismiss Counts IV, V, and VII against Virtus and FIS, and all Counts against Elston. The Court will enter an Order consistent with this Memorandum Opinion.

*/s/ Georgette Castner*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE